# CHRISTY v. UNION OIL & GAS CO.

### No. 516. Opinion Filed March 21, 1911.

### (114 Pac. 740.)

**MINES AND MINERALS—Liens—Rights of Subcontractor on Lease-hold for Oil and Gas.** A subcontractor on a leasehold for oil and gas purposes is entitled to a lien thereon under section 2, art. 5, c. 28, Sess. Laws 1905 (section 6171, Compl. Laws 1909), from the same time, in the same manner, and to the same extent as the original contractor, but is not entitled to a lien for any greater amount or to any greater extent; and, where there is no primary liability to the original contractor, there is not, under said act, any liability to the subcontractor.

(Syllabus by the Court.)

*Error from District Court, Kay County; William M. Bowles, Judge.*

Action by Gus Christy against the Union Oil & Gas Company. Judgment for defendant, and plaintiff brings error. Affirmed.

*Pratt, Moss & Turner,* for plaintiff in error.
*Tetirick & Curran,* for defendant in error.

DUNN, J. This case presents error from the district court of Kay county. September 28, 1906, plaintiff in error, as plaintiff, filed his petition against defendant in error as defendant, and Earnshaw & Kevan, as partners, for the purpose of foreclosing a subcontractor's lien. For the purpose of this case it was conceded that the owner of the leasehold was not indebted to the contractor who employed plaintiff, due to the fact that he had, without the fault of the owner, abandoned the work; the contract provided that until the work was completed the owner should be under no liability to the contractor. It was further conceded that the terms of the contract were known to the plaintiff at the time he was doing the work, and at the time he filed his lien; and that at the time he began his action he knew that under the specific terms of the contract the owner owed the contractor noth-

ing. The question therefore arises, under these conditions, Is the plaintiff entitled to enforce a lien on the leasehold for the value of the services which he rendered the contractor?

The law relating to the liens of mechanics is statutory, and its scope, operation, and effect, measured by the terms of the written law. *Toledo Novelty Works v. Bernheimer*, 8 Minn. 118 (Gil. 92). And implications extending the operation thereof in favor of subcontractors are not favored; parties claiming rights thereunder are required to show that they come or bring themselves within the plain terms of the law, and where they do not they are excluded from its benefits. Phillips on Mechanics' Liens, § 45; *Shields v. Morrow*, 51 Tex. 393; *Ayres et al. v. Revere et al.*, 25 N. J. Law, 474. The section of the statute under which the plaintiff claims his right to recover is section 2, art. 5, c. 28, p. 324, Session Laws of Oklahoma, 1905 (section 6171, Comp. Laws of Okla. 1909), which reads as follows:

"Any person, copartnership or corporation who shall furnish such machinery or supplies to a subcontractor under a contractor, or any person who shall perform such labor under a subcontract with a contractor or who as an artisan or day laborer in the employ of such contractor and who shall perform any such labor, may obtain a lien upon said leasehold for oil and gas purposes or any gas pipe line or any oil pipe line from the same tank (time) and in the same manner and to the same extent as the original contractor for the amount due him for such labor, as provided in section 1 of this act (6170)."

The same session of the Legislature passed an act, article 1 of chapter 28, Session Laws of Okla. 1905, which related to the general subject of mechanics' liens. Section 2 of that act (section 6153, Comp. Laws of Okla. 1909), in so far as the same is pertinent to this discussion, is as follows:

"Any person who shall furnish any such material or perform such labor under a subcontract with the contractor, or as an artisan or day laborer in the employ of such contractor, may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material and labor

* * * by filing with the clerk of the district court of the county in which the land is situated, within sixty days after the date upon which material was last furnished or labor last performed under such subcontract, a statement, verified by affidavit. * * * Immediately upon the filing of such statement the clerk of the district court shall enter a record of the same in the docket provided for in section 6152, and in the manner therein specified, that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor."

The latter act was approved March 13, 1905, while the former, which related particularly to the performing of labor or furnishing of materials or supplies to owners of leaseholds for oil and gas purposes, and for material and labor for the building of pipe lines, was approved March 15, 1905, and it is the argument and contention of counsel for plaintiff that, notwithstanding section 2 of both acts contains the language that the lien shall obtain "from the same time, in the same manner, and to the same extent as the original contractor for the amount due him for such labor," that it was the intention of the Legislature in the passage of the act relating to oil and gas that the subcontractor might secure a lien, independent of whether the owner of the leasehold or property was indebted to the contractor, and that this intention was made manifest by the absence from what may be termed the oil and gas act, of the following language contained in the other, "that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor," the argument made being that, both acts having been passed at the same session of the Legislature, that effect in the construction of this act must of necessity be given to the absence therein of the language mentioned quoted from the other, and that if effect is given to it plaintiff would be entitled to recover against the defendants herein, notwithstanding the fact that under the contract which it had made to secure the performance of the work it owed absolutely nothing to the man with whom it dealt.

We cannot agree with counsel. The act is an act covering a specific subject, and the construction which counsel seek to have placed thereon is one which, if within the intent of the Legislature, should, and we believe would, have been made manifest in language of plain and unambiguous meaning, and not left to conjecture or implication. In addition to the fact that language is lacking clearly fixing the liability contended for, it is to be observed that the section involved allows the party to obtain a lien "from the same tank (time) and in the same manner and to the same extent as the original contractor." This, it appears to us, manifested a clear intention on the part of the Legislature to relieve the leaseholder from any liability in addition to that which he had voluntarily assumed in his contract, or for which he was otherwise legally liable, and left a subcontractor to his remedy against his employer for all services rendered or material furnished in excess thereof.

Speaking generally on this subject, Phillips on Mechanics' Liens (2d Ed) § 45, says:

"But few presumptions are made in favor of subcontractors, and they must invariably show that they come within the plain words of the law. When they do not, they will be excluded from its benefits. Thus, where all the previous statutes of a state contemplated a lien only in favor of an original contractor, with the right to a subcontractor to give notice to the owner of his claim, and then bring a personal action against the owner for the unpaid balance, it was held that a law providing that 'any person or firm, artisan or mechanic, who may labor or furnish materials to erect any house shall have a lien,' etc., did not extend the lien to subcontractors on the ground that the provisions of the law ought to be positive and express, to authorize an unlimited lien on an owner's property, where there was no privity of contract, and irrespective of the amount of the original contract."

In support thereof there is cited the case of *Shields v. Morrow, supra.* The plaintiff, who was a subcontractor, relied upon an act of the Texas Legislature, dated November 17, 1871 (Paschal's Dig. art. 7112). He had brought his action against the owner of the land to enforce his lien for services rendered and material furnished as a painter and glazier. Construing the act,

which it will be noted lacks the limitations contained in our statute, and in support of the proposition which we have laid down above, that, to make a party liable in excess of his express contract, the provisions of law should be positive and certain, and not be left to mere implication, the Supreme Court of Texas said:

"So much of this act as is necessary for the purpose of this opinion provides that any person or firm, artisan or mechanic, who may labor, furnish material, machinery, fixtures, and tools to erect any house improvements, or to repair any building or article, or any improvement whatever, shall have a lien on such article, house, building, fixtures, or improvements, and shall also have a lien on the lot or lots, or land necessarily connected therewith, to secure payment for labor done, material and fixtures furnished for construction or repairs. In order to fix and secure the lien herein provided for, the contractor, mechanic, laborer, or artisan furnishing material shall have the right at any time within six months after such debt becomes due to file his contract in the office of the district clerk of the county in which such property is situated, and cause the same to be recorded in a book to be kept by the district clerk for that purpose. If the contract be verbal, a duplicate copy of the bill of particulars shall be made under oath, one to be filed and recorded as provided for written contracts, and the other to be served upon the party owing the debt. The material question arising upon the demurrer, and which is decisive of the case, is this: Is a subcontractor who supplies work and material upon a building not under a contract with the owner, but with the master builder alone, entitled, under the provisions of the above act, to the mechanic's lien, for the payment thereof, upon the lot and buildings? This character of lien is not given by the common law, but depends upon statute. *Pratt v. Tudor,* 14 Tex. 39. * * * It may be very seriously doubted, indeed, whether the Legislature has the power, as contended by counsel for appellant, to establish and fix a lien on property, as against the owner, in favor of a subcontractor, between whom there was no privity of contract, for any greater amount than was due by the owner to the principal contractor at the date when notice of the intention to thus fix the lien was given to the owner. If this, under any principles of justice, could be done at all, the provisions of the law should be positive and express to authorize the courts to give it this construction, and not be left, as in this statute of November 17, 1871, to mere

·implication. To give this, in connection with the previous statutes upon the same subject-matter, the construction now placed upon it by the court fully meets all of its reasonable requirements, gives, with the use of proper diligence, ample protection to the subcontractor and at the same time protects the just rights of the owner of the property. To give it the construction contended for by counsel for the appellant jeopardizes the property of the owner to the risk of a lien, made without his knowledge or consent, which may be extended indefinitely by the contract of a third party, perhaps entirely unknown to him, and for the payment of a claim which he had long before settled in good faith with the principal contractor, and in accordance with their deliberate agreement." ·

The law relating to mechanics' liens, as has been noted, is purely of statutory origin, and is not uniform among the states of the Union. Some Legislatures have passed acts authorizing a subcontractor to recover for his labor and material and to have a lien impressed upon the property improved without reference to the contract between the owner and the original contractor. The constitutionality of such acts, although mooted, has been by the courts sustained; but, in order that a man's property may have a lien impressed upon it without his direct knowledge and in excess of a definite specific contract, it occurs to us that the law under which it is effected should be couched in such clear and unambiguous terms that every man intending to improve should and would know when he deals with his contractor that he constitutes of him a vice principal, endowed with authority to subject his property to the liens of all whom he may select to furnish material or labor thereon, and this without reference to the owner's specific contract. In the case at bar defendant never intended to assume the burden which is here sought to be placed upon it. This fact was known to plaintiff when he contracted, and he knew that he was not entitled under the contract made to. the benefit which he now seeks to secure; and, concluding as we do that the statute relied on does not confer on him the right which he claims, the judgment of the trial court is accordingly affirmed.

TURNER, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., not participating.