## THACHER v. INTERNATIONAL SUPPLY CO. et al.

No. 24852.     Feb. 4, 1936.

C. B. McCrory and R. M. Cavanaugh, for plaintiff in error.

Chas. L. Yancey, G. C. Spillers, Donald L. Brown, and E. M. Calkin, for defendant in error International Supply Company.

Lashley & Rambo and Russell B. James, for defendant in error Producers Lumber Company.

PHELPS, J. The plaintiff in error, one of the defendants in the trial court, was the owner of an oil and gas lease. He will hereinafter be called owner. He entered into a written contract with Iglehart & Smyer, which firm later became Iglehart & Sutton, to drill a well on the lease for oil or gas. Iglehart & Sutton were also defendants in the trial court, and they will hereinafter be called drillers. The drillers were to complete and equip the well at their own expense, free of cost to the owner, and the contract also provided that they should "keep said well and lease free from all liens and claims of any kind and character." The consideration to be received by them was an undivided ¾ interest in the entire lease. The contract was not recorded.

The owner (plaintiff in error) then executed an assignment of an undivided ¾ interest in the lease to the drillers, and placed it in escrow in a bank, along with the contract, for delivery to the drillers upon their compliance with the terms of the contract. The well was drilled to a depth satisfactory to the owner and then plugged back and became and still was at the time of the trial a paying gas well. During the drilling the drillers purchased certain material from the defendants in error, International Supply Company and Producers Lumber Company, plaintiffs in the trial court, and those companies were two of the many plaintiffs and interveners in certain actions filed in the district court for the foreclosure of liens of laborers and materialmen. The labor liens were all paid, and all of the actions then pending were consolidated for trial. The trial court, pursuant to the findings, conclusions of law, and recommendations of a referee, decreed that by reason of their failure to pay the laborers' and materialmen's bills the drillers had forfeited their rights against the owners, and that therefore they were not entitled to the ¾ undivided interest in the lease, and left ownership of the entire lease in the plaintiff in error, Thacher. The drillers did not appeal, and that part of the judgment has become final. The trial court further adjudged that the defendants in error, the supply company and the lumber company, have judgment against the drillers for the amounts of material furnished, and a lien for the satisfaction thereof against the entire leasehold estate of the owner.

In appealing, the principal contention of the owner is that the lien rights of the supply company and lumber company, who are subcontractors, are measured by and can be no greater than the rights of the drillers, and that, since the drillers breached the contract in failing to pay the lien claims, and since said drillers thereby forfeited all claims against the estate, the subcontractors under them are not entitled to liens against the estate.

We are seldom presented with a more forceful or logical argument than that contained in the briefs of the plaintiff in error but in spite of the persuasiveness thereof, we detect a clear distinction, hereinafter dis-

cussed, between the fact situation in the authorities cited by him and the fact situation in the instant case. Uppermost among the controlling factors and principles herein, and not to be disregarded except for the most urgent reasons, are the facts that this is an equity action and that if we reverse the judgment of the trial court in its entirety, the plaintiff in error will be entire owner of a producing lease and well, absolutely free of cost to him and largely at the cost of the defendants in error. In the very beginning, it is manifest that if such a result may legally and consistently be avoided, such avoidance is the duty of a court of equity.

The cases cited by plaintiff in error do, in general terms, announce the rule that where there is no primary liability existing from the lease owner to the original contractor, there can be no lien in favor of a subcontractor under said original contractor. Christy v. Union Oil & Gas Co., 28 Okla. 324, 114 P. 740; Cameron Refining Co. v. Jerman, 110 Okla. 272, 238 P. 437; Brenner Oil Co. v. Dickason-Goodman Lumber Co., 108 Okla. 257, 236 P. 44; Carson v. Waller, 127 Okla. 186, 260 P. 72; Josey Oil Co. v. Ledden, 162 Okla. 262, 20 P. (2d) 582; Murray Tool & Supply Co. v. Bridgeport Machine Co., 164 Okla. 136, 23 P. (2d) 165. But in each and all of such cases the drillers abandoned operations and the owner received no benefit from the venture or from the contract. The principal purpose of the contract, in those cases, was never accomplished. In the instant case the drillers did not abandon performance of the principal purpose of the contract; the well was and, so far as we know, still is a producing, paying well. When this action was tried there were thousands of dollars in the hands of the receiver therefor. The owner has received that for which he contracted, except that some of the expenses for its procurement have not been met. It is very clear that the well itself may meet those expenses, so that the burden thereof will not be thrown upon the owner, without any compensating income, such as would have been the case if the well had not been completed, as in the cases cited above. The owner testified that he was satisfied with the manner of performance of the contract in all particulars except that of the obligation to pay the remaining claims. As stated above, the drillers did not abandon the main project, and apparently they did not seek in the trial court any adjudication that would have obtained their ¾ interest in the lease

after full settlement of the lien claims from their ¾ share of the oil runs. We express no opinion of whether they would have been entitled to such conditional relief. Nevertheless, it is illustrative of the point here being stressed,—that is, that from the viewpoint of the owner, and the interest and benefits derivable by him, the contract is completed in the phase thereof in which he was most interested, the production of oil or gas. The result of this decision will place him in exactly that situation for which he contracted.

The plaintiff in error argues that if the judgment of the trial court is affirmed, the result will be the complete impairment of his contract with Iglehart. The plaintiff in error says:

"The original contract contains three essential provisions—the 'non-lien provision', the provision 'to pay in property', and the condition 'precedent to the vesting of title'. If this tribunal holds that each of the above provisions are nullities, then what remains of the contract? If property owners cannot make such contracts, what sort of contracts can they make and have enforced? The mechanics' liens statutes are made, when claims come clearly within them, for the purpose of enabling strangers to the title of property to subject it to sale for the debts of others. If each of the provisions of the contract be unenforceable, then the right to contract is reduced to a delusion and a snare."

The answer to this contention is that there will be no interference with the enforcement of the contract, as between the parties thereto. We do not hold that the three quoted provisions of the contract are nullities and unenforceable. In fact, the trial court has considered those provisions and has adjudged that Iglehart, by reason of his failure to observe the nonlien provision, has forfeited all right to enforcement of the contract to convey him title to ¾ of the lease. That part of the judgment has become final. But we know of no rule of law permitting parties to so contract with each other as to do away with the statutory rights of third persons not parties to the contract.

The contention that an agreement between the lease owner and one in active operation thereof that the latter will not allow creation of liens against the leasehold estate will prevent the assertion of such liens by third parties contracting with said operator, was overruled in State ex rel. Mothersead v. Continental Supply Co., 137 Okla. 24, 278 P. 269, a case which, from both the practical

and theoretical viewpoints, is on a parity with the instant case. Therein one Bunte entered into an agreement with the owner to purchase the property by installment payments, the deed to be placed in escrow and delivered upon completion of the payments. The agreement further provided that Bunte was given possession of the property for the purpose of cleaning out and deepening the oil wells, and operating the lease, and in case he should choose to deepen any of said wells at his own expense, and thereby increase production, the money derived from oil runs should be applied on the purchase price. It was further provided that:

"He will not create or allow any lien to be filed or to accrue against the said property by reason of his operations, and that he will pay for all such operations promptly when due."

Bunte entered upon the premises and drilled the wells several hundred feet deeper, resulting in considerable increase in production. In deepening the wells he purchased material and incurred labor debts approximating $9,000, for which this court permitted enforcement of lien claims against the leasehold estate, in spite of the fact that Bunte subsequently defaulted in payments of the purchase price and never obtained title to the land or the lease. The same contention as is here urged was advanced in that case, to the effect that the "nonlien" provision protected the owner from lien claims. We pointed out that in all cases wherein such contention had been upheld the liens had been incurred because of expenses and improvements for the sole use and benefit of tenants, while in that case (as in this case too) the result was that liens were created for the benefit of the owner as well as the tenant. A study of that decision reveals that it is founded on the agency theory. On first impression it appears that where, as in the instant case, the contract between the owner and the operator, and the practice thereunder, create what would ordinarily be termed the relationship of independent contractor and contractee, it would be paradoxical to subject the lease to lien claims on the theory that the operator was his agent. But it is not paradoxical when one remembers that he may not escape or evade his statutory liability by the simple expedient of resorting to the doctrine of independent contractor. In other words, in a proper case it is an agency by operation of law. The parties are presumed to contract with reference to the lien law. As was said in the above decision:

"The contracts made by Bunte for the development of this lease must, therefore, in law be considered and held to be contracts of * * * (the owner) and subject to the liens. Parties cannot be permitted to evade the lien statute by merely making conditional sales contracts with insolvent vendees."

It will be noted in the above case Bunte was both conditional vendee and operator of the lease. The drillers in the instant case were operators of the lease, and were conditional vendees to the extent that they would obtain title to ¾ of the lease upon completion of the well and the payment of expenses incident thereto. The same reasoning applies. In the instant case the owner has obtained all of the advantages of substantial performance. He has obtained a producing well, and still owns the entire lease. He has not had to convey the ¾ interest to the drillers, which he expected to convey when he entered into the contract. Should we reverse the judgment of the trial court, the result would be that the owner would thereby obtain a producing well absolutely free of cost to himself, saving to himself the entire interest in the leasehold, and avoiding payment for that which he has thus obtained. Where they can prevent it, courts of equity will not permit such harsh result, to the detriment of others, or such unjust enrichment. On the other hand, if the final judgment in this case permits satisfaction of the liens to the amount of the contract between the owner and the drillers, represented by ¾ of the value of the lease, it will be as nearly substantial justice as can be obtained in the premises, and thereby the owner will obtain exactly what he contracted for in the first instance, no more and no less. How can he complain?

This reasoning to the effect that ¾ of the value of the lease should rightfully be subjected to the liens is impliedly admitted in two of the briefs filed herein by plaintiff in error, except that he attaches a condition to the effect that he recover an attorney's fee and costs of litigation. No evidence has been called to our attention concerning the amount or value of the legal services rendered, and therefore we may not with propriety determine or assess such fee in this court of review.

But where the contractor has not acquired the interest of the owner, such as the corresponding party did acquire in Arkansas Fuel Co. v. McDowell, 119 Okla. 77, 249 P. 717, and in Nix v. Brogan, 118 Okla. 62, 251

P. 753 this court, as well as most other courts, has restricted the amount of recovery by subcontractors to the contract price agreed upon between the owner and the contractor. Christy v. Union Oil & Gas Co., 28 Okla. 324, 114 P. 740. Our statutes so provide. Section 10979, the application of which is guided by sections 10981 and 10977, O. S. 1931. These sections of our statutes are preforce injected into the contract, to the possible detriment of lien claimants in limitation of their recovery, just as the same and other sections of the statutes are injected into the contract to the possible detriment of the owner in subjecting a part of his property to satisfaction of liens even though his contract had placed that burden upon the contractors. It therefore follows that the extent of satisfaction of the liens must not exceed ¾ of the value of the entire lease, including only ¾ of the net accrued profits therefrom.

In this connection, the time as of which the lease value should be taken has not been discussed by the parties. One's first impression, and no doubt the most attractive and easiest solution, would be to say that the value should be assessed or computed as of the date upon which the well began continuous production of oil or gas. But the lien claimants should have every right, as to the extent of property value from which the debts are to be paid, that the drillers would have had if they had vested themselves with the ¾ interest contemplated in the contract,—and if the drillers had become vested with that interest, they would have enjoyed the profits from the well to this date, and in the future, including their ¾ share in the money now in the hands of the receiver, or they could possibly have sold their interest at its highest market value on whatever date that highest market value was reached since the date of the completion of the well. This is a matter which we are not attempting to determine at this time, and when this cause is again in the hands of the trial court he may direct such continued operation of the property, or he may direct sale thereof and such distribution of the proceeds as will most effectually reach the ends of justice to all parties, in conformity to the principles herein announced.

Plaintiff in error contends that one of the lien claimants did not serve notice of its lien upon the owner within the 60 days prescribed by the statute for the filing of liens covering material furnished to a contractor, nor within a reasonable time thereafter. We have held that such notice may be furnished within a reasonable time after the expiration of said 60 days, and that what is a reasonable time is a question of fact depending upon the circumstances of the particular case. Union Bond & Investment Co. v. Bernstein, 40 Okla. 527, 139 P. 974. It seems most evident that what is a reasonable time must be determined largely by the question of whether the complaining party has been injured by the delay. No injury was done to the owner in this case by the fact that he was not notified until suit was filed some two or three months after the 60-day period, for in the meantime he had paid nothing on the contract price, and had parted with no consideration whatsoever to the contractors, the drillers. There has been no showing of such prejudice. His right of investigation was not hindered thereby, for it is not denied that the materials were actually furnished and that they were of the reasonable value set forth by the pleadings. Too, the owner while testifying admitted knowledge of the fact that bills and liens were being incurred, and stated that the drillers talked with him within a month or two after the last material was furnished and said that they had some very heavy indebtedness, "and they gave me the names." In view of these facts, we are unable to say that the conclusion of the referee and the trial court that the owner was notified of the liens within a reasonable time after the expiration of the 60 days was against the weight of the evidence.

In addition to the general supplies furnished for the drillers the supply company also furnished them some casing, on a conditional sales contract. This casing was not paid for, and the supply company filed a separate replevin action, to which plaintiff in error was not a party. That action was consolidated with the two lien actions in which plaintiff in error was a party, and they were all tried together. The referee and the trial court found that the casing could not be removed from the well without consequent destruction thereof, and injury to all parties, including plaintiff in error. Therefore it was adjudged that the supply company should not be awarded possession of the casing although it was entitled thereto; but in lieu thereof the supply company was given a lien for its value, against the entire leasehold estate. The supply company was also granted what was termed a "special lien" against this casing, in that the judgment directed that for the prior satisfaction of other liens the casing be excluded from the remainder of the property

if the leasehold should prove sufficient to satisfy those liens, thus possibly leaving the casing for the satisfaction of this particular lien. Plaintiff in error complains of this portion of the judgment, in that he was not a party to the replevin action, and further because of the court's having created a materialmen's lien out of a conditional sales contract. As to the first objection, we are informed by the briefs that the indebtedness for this casing was included in the supply company's petition in intervention, asking a lien thereon, in one of the two lien actions, in addition to the relief prayed for in the company's replevin action, which served to put plaintiff in error on notice that a lien was being sought as security for the purchase price of the casing. As to the other objection, it is not true that a court of equity may not create or enforce an equitable lien if the circumstances justify such action. The action of replevin, especially when consolidated with equitable actions demanding complete determination of all of the rights of the various parties in one suit, is sufficiently flexible to allow determination of equitable rights when such rights relate to the property or rights arising out of the contract. Kansas City Hay Press Co. v. Williams, 51 Okla. 6, 151 P. 570; Jarecki Mfg. Co. v. Fleming, 130 Okla. 95, 265 P. 628, 57 A. L. R. 802; 54 C. J. 418, 586. And if the title or right to possession changes pending the trial, the replevin judgment should adjust the equities of the parties as of the time of trial. McDonald v. Schantz, 44 Okla. 648, 146 P. 36; Brook v. Bayless, 6 Okla. 568, 52 P. 738. In the McDonald Case, supra, we stated:

"True, the gist of the action is the right of the plaintiff to the immediate possession of the property at the commencement of the action, but if the title or right of possession to the property changes subsequent to the commencement of the action, and prior to the date of the trial, the judgment should adjust the equities between the parties as such equities exist at the time of the trial; the adjustment of such equities being necessary for a final and complete determination of the controversy."

The instant case is an ideal illustration of the wisdom of the rule: the sales contract retained title in the company and provided that it could retake the casing; but this would have destroyed the well, so instead of causing such a harsh result the court softened the judgment by reducing the company's ownership to a mere lien. From an equitable viewpoint the plaintiff in error is not in a position to complain. In our opinion this was a wise and practical order, and is illustrative of the elasticity and completeness of equity powers. A court of equity which has obtained jurisdiction of the controversy on any ground, or for any purpose, will retain jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject-matter. Interstate Bldg. & Loan Co. v. Oklahoma City, 84 Okla. 227, 203 P. 172.

We take it that the following excerpt from 37 C. J. 319 is supported by the authorities and good reasoning:

"In the absence of an express contract, an equitable lien, based upon those maxims which lie at the foundation of equity jurisprudence, may arise by implication out of general considerations of right and justice, where, as applied to the relations of the parties and the circumstances of their dealings, there is some obligation or duty to be enforced."

The plaintiff in error also cites some authorities in support of the contention that where the contractor is to be paid in property instead of money, no lien may be enforced by subcontractors. These cases appear to emanate from jurisdictions wherein the theory prevails that the subcontractor has no direct rights whatsoever against the owner, but stands for all purposes exactly in the shoes of the contractor, even as to the medium of payment. Such a rule defeats the purpose of the statute and would permit the contractor and owner to privately abrogate the legal rights of the subcontractor without the knowledge or consent of the latter. Our statute provides that the subcontractor is entitled to his lien in the same manner and to the same extent as the original contractor. "To the same extent" clearly means to the same monetary amount, and "in the same manner" is a comprehensive term the meaning of which is entirely opposite to the narrow, restricted, technical interpretation thereof which would be necessary in order to justify the conclusion reached in the cases cited on this proposition by the plaintiff in error.

As to the primary question, that is, the provision that the supply company and the lumber company foreclose their liens, the judgment is affirmed, but the cause is remanded with instructions to the trial court to limit the satisfaction thereof to such interest in the leasehold as would have been acquired by the drillers, Iglehart & Sutton, had they completely performed their con-

tract by the payment of the lien claims. For this purpose, if the trial court desires, it may cause the sale of such interest in the lease as would have been the value of the contractors' interest, or it may continue operation thereof in the hands of the receiver to the end that all parties may ultimately obtain as nearly substantial justice as is possible, within the judgment and discretion of the trial court. The costs of this appeal will be borne one-third by plaintiff in error and one-third by each of the defendants in error. In view of the fact that further proceedings are necessary we leave for final determination by the trial court the matter of attorney's fees, and in the amount and effect thereof upon the lienable portion of the estate the attention of the trial court is called to Consolidated Cut Stone Co. v. Seidenbach, decided January 28, 1936, not yet officially reported.

McNEILL, C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.