## HAGGARD et al. v. SUNRAY OIL CO.

No. 22536.   Feb. 18, 1936.

Walker & Lewis, for plaintiffs in error.

A. K. Swann, for defendant in error.

RILEY, J.   This is an appeal from a judgment denying plaintiffs a lien upon certain casing drawn from an abandoned oil well.·

The action was commenced by O. A. Haggard against Sam C. Hall, H. C. McIntyre, Sunray Oil Company, and John Osborn. He al'eged in substance that on or about May 28, 1930, he entered into a contract with Sam C. Hall, who represented that he was associated with McIntyre and another party. and had the permission of the Sunray Oil Company as the owner to pull certain casing from the well, describing it; that his contract was upon the basis of 30 cents per foot for pulling the casing, and the further sum of $25 per day for "fishing" or "plugging." That under said contract he pulled three strings of casing of different sizes from said well, amounting in all to some 9,830 feet; that he spent some 40 days in "fishing" and ten days in "plugging" the well; that under the contract Hall was to furnish certain fishing tools, which he failed to do, and which plaintiff was compelled to rent at a cost of $263, and he added cost for certain hauling, amounting to $80.   In all, his claim amounted to $4,542.76; he filed his lien statement in the office of the county clerk of Logan county, in which the well was located, claiming a lien on said casing, which he alleged was still in his possession.   He alleged that Hall and Sunray Oil Company were jointly interested in said enterprise and were partners therein.   He asked for judgment against Hall, McIntyre, and the Sunray Oil Company for said amount, and an order establishing his lien and for the foreclosure thereof.

He alleged that defendant Osborn claimed some interest in or a lien on said casing, but that same, if any he had, was junior and inferior to the claim of plaintiff.

Osborn answered and by cross-petition set up a claim of $300. and lien for services rendered in "shooting" the casing, and asked that his lien be declared a first and prior lien on said casing.

Defendant Sunray Oil Company answered by general denial, admitting, however, that üt was the owner of the casing.   It specifically denied the joint enterprise allegations.   It then alleged that Sam C. Hall was an independent contractor employed by it to withdraw and remove said casing under a written contract, a copy of .which was attached to and made a part of the answer. Said contract is somewhat involved, but provides in substance that Hall should convey to the Sunray Company an undivided one-eighth interest in the nature of an overriding royalty in the oil and gas to be produced from an 80-acre tract of land upon which Hall had an oil and gas lease; that Hall was to commence the actual drilling of a well on said land within 60 days, and complete same to a depth of 5,000 feet unless oil or gas be found in paying quantities at a lesser depth, all to be completed within twelve months, all at the expense of Hall and without the participation of the Sunray Company in any way; that in consideration therefor the Sunray Oil Company was to rent, lease. and let to Hall all the casing in the well mentioned; that Hall should at his own expense draw·all of said casing and transport same to the location of the·well to be drilled by Hall; should have the use of the

casing, so far as it would go, in drilling the proposed well; all to be done at his own expense and he at all times and in any event to keep said pipe and casing free and clear of all liens and incumbrances of any kind or nature, the title thereto to remain in the Sunray Oil Company. Hall was to draw and remove the casing from said well in case it should not be productive. But if such well should be productive and it be necessary to keep the casing therein, then Hall should have the option and right to purchase same.

It also provided that Hall should sell and assign to the Sunray Company an oil and gas lease running for approximately five years covering 80 acres adjoining the 80 acres upon which the proposed well was to be drilled, the Sunray Company agreeing to pay therefor the sum of $4,000. Two thousand dollars thereof was to be paid when the well had been spudded in and drilling commenced, the remaining $2,000 to be paid on completion of the well. The contract then provided in substance that upon failure of Hall to complete the well, the Sunray might go in, take possession of all machinery, tools and equipment, and complete the well, and should have a lien upon the interest of Hall for all expense incurred.

The record discloses that the petition of plaintiff and the cross-petition of Osborn were both filed within 60 days after the last work was alleged to have been done by either of them.

The cause was tried to the court without a jury, resulting in a judgment in favor of plaintiff and cross-petitioner against Sam C. Hall, and in favor of the Sunray Company as against both and denying the lien claims of both.

They both appeal, filing separate petitions in error, but join in one brief.

It is contended that the court erred in failing and refusing to render judgment against the Sunray Company and in favor of each of the plaintiffs in error.

The plaintiffs were not entitled to a personal judgment against the Sunray Company.

The evidence wholly fails to show that they had a contract, express or implied, with the Sunray Company. The most that is shown is that when they learned that the casing in the abandoned well would likely be pulled, they went to the Sunray Company and inquired about it, and were informed that the Sunray Company had made a deal with Hall to pull said casing. The evidence is somewhat in conflict as to whether or not they were informed of the specific provisions of said contract. But Haggard then went to Hall, and whatever contract he had for the work was with Hall. As to the Sunray Company, neither Haggard nor Osborn were more than subcontractors.

They contend, however, that their lien should have been allowed under the provisions of section 7464, C. O. S. 1921. Said section, as amended by chapter 42, S. L. 1927, provides that any person, corporation or copartnership who shall, "under contract, express or implied, with the owner of any leasehold for oil and gas purposes, or the owner of any gas pipe line or oil pipe line, or with the trustee or agent of such owner, perform labor or furnish material, machinery and oil well supplies used in the digging, drilling, torpedoing, completing, operating or repairing of any oil or gas well * * * or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing or repairing of any gas well, or performing any labor upon any oil well supplies, tools or other articles used in digging, drilling, torpedoing, operating, completing or repairing any oil or gas well, shall have a lien," etc.

There is a suggestion that plaintiffs in error in now asserting their right to a lien under the provisions of section 7464, supra, are departing from the theory upon which they asserted their right to a lien upon the casing in the trial court. It is said that they were then claiming under the provisions of section 7432, C. O. S. 1921.

It may appear that plaintiffs in error were to some extent relying upon section 7432, since the lien therein provided for is made dependent upon possession, of the property, and plaintiff Haggard alleged in his petition that the casing involved was still in his possession.

It appears also that plaintiffs in error may have been relying to some extent upon the provisions of sections 7454 and 7455, C. O. S. 1921, in that they filed their lien statements in the office of the county clerk, whereas the requirement where a lien is claimed under section 7464, supra, is that the lien statement should be filed in the office of the court clerk.

But in Morley v. McCaskey, 134 Okla. 50, 270 P. 1107, it is held that where a lien claimant brings his action within the time limit fixed in section 7471. C. O. S. 1921. for enforcing his laborer's lien, the mere fact of having filed his lien statement under sections 7461 and 7462 is not such an abandonment of his prior lien claim as will

prevent him from asserting his right thereto as provided in sections 7468 to 7472, C. O. S. 1921.

And since the decision in Peaceable Creek Coal Co. v. Jackson, 26 Okla. 1, 108 P. 409, it is uniformly held that no lien statement need be filed, if before the time within which such statement may be filed an action is commenced in the proper court to establish and enforce the lien.

The lien claims here involved would not be sustained under section 7432, for the services were not rendered "to the owner" of the casing. The liens could not be sustained under section 7468, supra, for it appears that plaintiffs' contracts were not with the owner, and that they were subcontractors, and the casing involved was in no sense "the production of their labor."

If the liens claimed are sustainable, it must be under section 7466, C. O. S. 1921, and that part of section 7464 as is incorporated therein by reference.

Hall had the contract with the Sunray Company, the owner; Haggard and Osborn had their contracts with Hall; therefore, they were subcontractors, and section 7466, supra, is applicable as to oil and gas well liens.

The rights of a subcontractor thereunder are stated in Christy v. Union Oil & Gas Co., 28 Okla. 324, 114 P. 740, and again in Brenner Oil Co. et al. v. Dickason-Goodman Lbr. Co., 108 Okla. 257, 236 P. 44.

In the Christy Case it is held:

"A subcontractor on a leasehold for oil and gas purposes is entitled to a lien thereon under section 2, art. 5, c. 28, S. L. 1905 (sec. 6171, Comp. Laws 1909), from the same time, in the same manner, and to the same extent as the original contractor, but is not entitled to a lien for any greater amount or to any greater extent; and, where there is no primary liability to the original contractor, there is not, under said act, any liability to the subcontractor."

In the opinion it is said:

"In addition to the fact that language is lacking clearly fixing the liability contended for, it is to be observed that the section involved allows the party to obtain a lien from the same time and in the same manner and to the same extent as the original contractor.' This, it appears to us, manifested a clear intention on the part of the Legislature to relieve the leaseholder from any liability in addition to that which he had voluntarily assumed in his contract, or for which he was otherwise legally liable, and left a subcontractor to his remedy against his employer for all services rendered or material furnished in excess thereof."

There the owner was not obligated to the original contractor because he had abandoned the work, and his contract with the owner provided that until work was completed the owner should be under no liability to the contractor. In this case it is conclusively shown that Hall abandoned his contract with the Sunray Company, and if it may be considered that the Sunray Company ever agreed to give Hall anything of value for pulling the casing, it was not to be given unless and until Hall had complied with the contract: so far as the casing is concerned, Hall was merely to have the use of the casing, and give therefor an overriding one-eighth interest (in the nature of a royalty interest) in a well to be drilled by Hall, all at his own expense.

In Brenner Oil Co. v. Dickason-Goodman Lbr. Co., supra, it is held:

"By reason of sections 7464 and 7466, Comp. St. 1921, a lien is given in favor of a materialman, under a subcontractor, from the same time and in the same manner to the same extent, as if the materialman had furnished the material at the instance of the original contractor. But where there is no primary liability existing from the leaseholder to the original contractor, there cannot, under said sections, be a lien in favor of a materialman under a subcontractor."

Then, if the lien of the subcontractor could be only from "the same time and in the same manner and to the same extent as the original contractor", it is pertinent to inquire whether, under the record in this case, Hall, the original contractor, could ever have had a lien on the casing for any work, etc., he might have done in pulling the casing. Had he paid Haggard and Osborn in full for their work, would he have had a right to a lien upon the casing? Certainly not under his contract with the Sunray Company, for he agreed to do the work at his own expense. He was to get the use of the casing in another well to be drilled by him upon another lease, owned by him. But he was to pay therefor an overriding one-eighth interest in the production of said well (in the nature of a royalty interest), but that was the extent of the obligation of the Sunray Company, plus the agreement to purchase a lease covering an adjoining tract of land. But this obligation was contingent upon at least "spudding in" and commencing actual drilling of the proposed well, which was never done.

It is contended that the agreement between

Hall and the Sunray Company amounted to a joint adventure in the nature of a partnership. This contention cannot be sustained. The contract as a whole shows that the Sunray Company was not to participate in, but was specifically excluded from, the management of the proposed oil well. It was not to pay any part of the losses or expenses, either of drilling or operating the well. It was merely to receive a definite one-eighth part of the production from the well, and this without respect to cost of drilling or operating the well. It was to be in payment for the use of the casing. It is clear from the contract that no partnership was intended.

Plaintiffs in error cite State ex rel. v. Continental Supply Co., 137 Okla. 24, 278 P. 269, to sustain their claim. The facts in that case are entirely different. In that case there was a conditional sale of the oil and gas leasehold under which he went into possession and was, as there held, operating the lease for the benefit of the grantor under the conditional sales contract. The entire proceeds of the oil runs, except the sum of $100 per month to pay the pumper's salary and other incidental expenses, were to be paid directly to the grantor. The grantee was to receive no benefit whatever until the purchase price was paid. Such are not the facts in this case. Hall was seeking the use of the casing for his own benefit, merely agreeing to pay rental therefor with an interest in the production rather than in money. In no sense could it be said that he was a partner of or agent for the Sunray Company.

There was no error in the judgment denying the lien, and it is, therefore, affirmed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.