L. G. SEMKE, Appellant,

v.

SECURITY STATE BANK, Appellee.

No. 52278.

Supreme Court of Oklahoma.

Sept. 18, 1979.

Rehearing Denied Dec. 3, 1979.

William J. Otjen, Jr., Enid, for appellant.

Owen W. Laughlin, Woodward, for appellee.

HARGRAVE, Justice.

This appeal involves a suit originally filed by Appellee as mortgagee to replevin an automobile in the possession of the Appellant. Appellant claimed a storage lien on that vehicle.

On October 7, 1977, Kelley J. North and his grandmother, Evelyn Dauphin, borrowed $1,800 from Appellee bank to purchase an automobile for North. Appellee perfected its security interest in the automobile in Woodward County, Oklahoma, on October 26, 1977. The first payment on the loan was due November 5, 1977, but was not made. On that same day, a Saturday, North took the Vega automobile to Appellant's automobile agency in Enid, Oklahoma, and made an offer to sell it. Appellant agreed to buy the Vega and gave North a check for $600 and North signed the title over to Appellant. The title did not reflect the automobile was subject to a security interest. Appellant found the security agreement in the Vega's glove compartment while cleaning the auto for resale that same day. The Appellant, Semke, then located Dauphin and received confirmation that the Vega was subject to a security agreement. Dauphin notified the bank of North's purported sale and three to five days later the bank called Semke. It appears the Appellant did not want to give up the Vega until payment on his check had been stopped. Both parties agreed the Vega needed to be protected until the bank took possession. The bank's president testified he agreed to wait a while and then send someone to pick it up. Appellant stored the automobile inside his building because it was not freeze protected and contained an easily stolen accessory in the form of a stereo radio. Sixty-five days later, on January 10, 1978, Appellee next contacted Appellant who demanded a storage fee of $150 be paid on the Vega. Appellee's president testified he responded to the demand by stating, "I said, well, it sounds kind of high, but, you know, whatever, and then I got—I hung the phone up and I got to thinking, my gracious, we don't owe, you know, storage on this thing." Appellant refused to release the automobile when two of Appellee's people came to repossess it.

On January 10, 1978, Appellee sued North, Dauphin and Appellant Semke alleging in one cause of action he was entitled to judgment on the security agreement, foreclosure on the secured property and its possession, at the time in the hands of Appellant. Appellee secured an ex parte order directing Appellant to appear to challenge Appellee's right to recover the possession of the property. Appellant did not appear, the writ was issued, and after Semke refused to deliver possession to two deputies from the Sheriff's office, the car was later replevined.

On February 13, 1978, Appellant filed an answer wherein he denied wrongful detention of the Vega and alleged Appellee agreed to store the vehicle with him, that a storage bill of $187.50 was owing, and that he was entitled to a $500 exemplary dam-

age judgment by virtue of Appellee's "baseless, malicious, vexatious and frivolous" action. The Bank denied these allegations in its reply. After trial the Court found that proper notice had been given Appellant; found North and Dauphin in default, and entered judgment for principal, interest and attorney's fee of $285. The trial Court found Appellee had a valid lien and ordered the Vega sold and also held the Appellant car dealer did not hold a valid lien of any nature, and also found the writ of replevin was valid and awarded an attorney's fee against Appellant of $500 in addition to costs of $38.

■ Appellant's first proposition argues the petition must allege facts establishing the actual value of the Vega automobile in order to comply with the mandatory statutory requirements for replevin but this proposition is ineffective inasmuch as the Appellant did not demur to the petition or require it to be made more definite or certain.

■ Secondly, under the proposition alleging Appellee's failure to follow statutory procedure the Appellant points to the fact that the Judge signed the order giving notice of the replevin hearing date and not the Clerk as provided in 12 O.S. § 1571. It is undisputed the Appellant received the notice. There is no claim that Appellant was prejudiced by this action and we find no prejudicial error arising from the Judge's completion of the administrative task of issuance of the instrument.

■ Appellant's second proposition urges the trial Court erred in failing to allow Appellant a storage lien under 15 O.S.1971 §§ 511 and 514, and/or 42 O.S.1971 §§ 6 and 91. The answer filed by Appellant, although not styled as a cross-petition, does contain allegations of an agreement by Appellee to store the Vega. Appellee denied this allegation. Thus the issue of fact of whether or not the parties agreed on a storage contract is presented. The petition in error raises the issue of denial of a storage lien and preserves it for appellate review. 42 O.S.1971 § 6 allows a lien to be created by contract. The brief transcript of the hearing in this proceeding, when reviewed, presents testimony that justified at least two conclusions from the evidence presented. First, that the Appellant requested the vehicle remain at his premises for his benefit, and as the bank president testified as he understood his conversation with the Appellant, Semke would contact the bank when his need to retain the vehicle no longer existed. Second, one can conclude from the evidence that after the vehicle had remained at Semke's establishment for over a month, the bank president reluctantly agreed to a storage fee in a conversation over the telephone. It cannot be said the trial Court erred in failing to find a contract for storage under the conflicting evidence and inferences drawn therefrom.

Appellant asserts he obtained a possessory lien under 42 O.S.1973 Supp. § 91. As provided in subsection (a) of that statute the lien provided therein is a means of enforcing whatever obligation is owed the party in possession and clearly does not create an obligation by statute but only a means of enforcing a debt otherwise created, for the statute reads in part:

"(a) Every person who while lawfully in possession of an article of personal property, renders any service to the owner thereof by furnishing . . . safe-keeping . . . [or] storage . . . has a special lien thereon dependent on possession for the compensation, *if any*, which is due to him from the owner for such service." (Emphasis added)

■ Whatever inferences are to be drawn from the evidence discussed above, the statute quoted is not broad enough to attach the statutory lien on the automobile for a storage fee. First, the statute does not establish a primary obligation but only a means of satisfying an obligation otherwise created: . . . "has a special lien thereon . . . for the compensation, if any, which is due to him from the owner . . .". The statute also does not provide for the bank's liability for the compensation, if any, due from the owner. It is critical that under 42 O.S.1973 Supp. § 91

the lien attaches when a party in possession renders a service to the owner for the compensation due from the owner. At the time the lien is argued to have arisen the Appellant was both the party in possession and the owner of the stored vehicle. Under 12A O.S.1971 § 2–401(2)[1] title to the automobile passed to the buyer, Semke, at the time and place at which the seller, North, completed his physical delivery of the automobile to Semke. *Medico Leasing Co. v. Smith*, Okl., 457 P.2d .548 (1969). The bank possessed a prior perfected security interest and Semke possessed the legal title which he continued to hold until the bank foreclosed upon the security.

This Court held, in *Haggard v. Sunray Oil Co.*, 176 Okl. 81, 54 P.2d 662, that for a lien to arise under this statute, (§ 91 supra) as previously codified, it is essential that the service be rendered to the owner, and in the absence of a service rendered to the owner the lien was held not to arise. Once the service is found rendered to the owner the statute specifies the lien arises to protect party rendering a service for the compensation due him *from the owner.* There is no statutory authority for imposition of a lien against owners of a security interest, and concluding that Semke had a lien against himself for the service he rendered is forestalled by the merger of the lien and the greater estate of legal title ownership. *Phoenix Mutual Life Ins. v. Harden*, 596 P.2d 888 (Okl.1979). From this it can only be said the trial court correctly determined Semke did not possess a lien for storage.

 The remaining issue is the propriety of the allowance of a $500 attorney fee allowed the appellee bank under 12 O.S. 1972 Supp. § 1580, allowing attorneys' fees to the prevailing party in a replevin action. The Court of Appeals vacated the award finding that Semke was a mere stakeholder and thus not liable for an attorney's fee under the last mentioned statute. However, Semke cannot properly be categorized as a stakeholder under the facts at hand. The bank sent two individuals out to pick up their security and they were not able to do so. Indeed two Sheriff's deputies were unable to obtain the auto on their first visit to Semke pursuant to a valid writ of replevin issued out of the District Court of Woodward County. Semke's status as a stakeholder is further negated by the fact that at the time he was in possession of the auto he was the holder of the legal title subject to a prior security interest. Given this state of the record, the appellate court erred in concluding the appellant was not claiming possession of the security and in characterizing him as a stakeholder, thereby vacating the attorney's fee granted appellee under 12 O.S.1972 Supp. § 1580. Additionally, the Court of Appeals erred in considering attorneys' fees for appellant on his claims inasmuch as this court can discern no indication that that issue was presented to the trial court, raised in the petition in error, or addressed in the briefs.

THE OPINION OF THE COURT OF APPEALS IS VACATED AND THE JUDGMENT OF THE TRIAL COURT IS IN ALL RESPECTS AFFIRMED.

All Justices concur.

---

1. 12A O.S.1971 § 2–401

 . . ."(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; . . ."