961 F.2d 221
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee and Cross-Appellant,
v.
Eldon Lee STARK, Jr., Defendant-Appellant and Cross-Appellee.
 Nos. 90-6390, 91-6002.
 United States Court of Appeals, Tenth Circuit.
 April 17, 1992.
 
 Before BALDOCK, and EBEL, Circuit Judges, and ALDON J. ANDERSON, Senior District Judge.*
 ORDER AND JUDGMENT**
 DEBEL, Circuit Judge.
 
 
 1
 This appeal raises two issues. First, did the Government, by prosecuting the instant offense, plainly violate a plea agreement entered into with the Defendant on a prior indictment? Second, did the sentencing judge err by holding that the Government waived its claim to a sentence enhancement pursuant to 18 U.S.C. § 3147 when the Government failed to object to the absence of the enhancement in the pre-sentence report? We answer the first question in the negative and the second question in the affirmative. Accordingly we affirm the conviction but reverse the sentence and remand with instructions for the court to vacate the improper sentence and to resentence consistent with this Order and Judgment.
 
 FACTS
 
 2
 On December 10, 1987, the Defendant, Eldon Lee Stark, Jr., was indicted on five counts involving the alteration of vehicle identification numbers (VIN's) on various automobiles and automobile parts. On December 21, 1987, Stark was released on bond. On April 11, 1988, pursuant to a plea agreement of that date, Stark pled guilty to one count in exchange for a dismissal of the other counts and a promise by the Government not to prosecute any offenses occurring prior to the date of the plea agreement. Stark was sentenced on June 22, 1988, but he remained free on bond until August 8, 1988, when his sentence commenced.
 
 
 3
 On June 5, 1990, Stark was indicted for possessing with intent to sell a vehicle, a Chevrolet Blazer, with an altered VIN. He was convicted and sentenced on the Blazer indictment. The Government requested a sentence enhancement on the Blazer conviction because, it argued, the offense conduct occurred while Stark was on release status from his earlier indictment. Under 18 U.S.C. § 3147 and United States Sentencing Guideline 2J1.7, a defendant's offense level must be increased by three points if his offense conduct occurred while he was on release status.
 
 
 4
 Prior to the trial, the Government provided notice that it was seeking an enhancement pursuant to 18 U.S.C. § 3147. Although the Government asked for the enhancement at the sentencing hearing, it failed to object to the pre-sentence report (PSR), which did not mention this enhancement. The sentencing court held that the Government waived its enhancement claim by failing to object to the PSR.
 
 
 5
 On appeal, Stark argues that he sold the Blazer no later than November 25, 1987, thus terminating his offense conduct ("possession with intent to sell") prior to April 11, 1988, the date of his plea agreement on his first indictment. Because that plea agreement promised no prosecution for offense conduct committed prior to April 11, 1988, Stark argues that the Blazer indictment and conviction should be dismissed. The Government responds that the sale of the Blazer did not occur until June 14, 1988. Thus, the Government argues, offense conduct occurred subsequent to the date of the plea agreement, permitting prosecution under the agreement.
 
 
 6
 Additionally, the Government cross-appeals the denial of its enhancement claim. Stark responds that the district court correctly held that the Government had waived its sentence enhancement claim by failing to object to its absence from the PSR. Further, Stark argues that because he sold the Blazer on or before November 25, 1987, his criminal conduct ceased before December 21, 1987, when he was released on bond. Thus, he argues, he did not commit the crime while on release on bond, precluding enhancement of his sentence pursuant to section 3147.
 
 DISCUSSION
 I. The Plea Agreement Defense
 
 7
 There is no dispute over the existence or substance of the plea agreement: Both parties acknowledge that the Government agreed "not to prosecute [Stark] for any offenses occurring prior to the date of the plea agreement." Government Reply Br. at 11-12.[1] The only question is whether Stark was prosecuted in connection with the Blazer for conduct occurring prior to the date of the plea agreement, April 11, 1988.
 
 
 8
 We start by noting that there is no indication in the record that Stark raised the plea agreement defense at trial.[2] Stark has offered no reason for his failure to raise this defense below. Accordingly, our review on appeal will be limited to "plain error." Fed.R.Crim.P. 52(b).
 
 
 9
 "In order to find plain error, the district court's error ... must have been 'both obvious and substantial.' " United States v. Jefferson, 925 F.2d 1242, 1254 (10th Cir.), op. after remand, 931 F.2d 1396 (10th Cir.), cert. denied, 112 S.Ct. 238 (1991) (citations omitted). Given Stark's failure to raise the plea agreement as a defense, and the fact that the agreement was never reduced to writing, there is no reason that the district court should have been aware of the agreement. Thus, the existence of the agreement could not have been "obvious" to the district court.
 
 
 10
 Further, even were the existence of the agreement known to the district court, it is far from "obvious" from the record that the instant prosecution violated that agreement. Stark's contention that the instant prosecution violates his plea agreement is based upon his argument that he sold the Blazer no later than November 25, 1987, well before the April 11, 1988 date of the plea agreement. Stark relies on the fact that he transferred the certificate of title to the buyer, Mr. Farris, no later than November 25, 1987.[3] However, the transfer of a certificate of title alone is not sufficient to constitute a sale under Oklahoma law. The certificate of title is not the same as legal title. See Medico Leasing Co. v. Smith, 457 P.2d 548, 551 (Okla.1969) ("[A] certificate of title to an automobile issued under the motor vehicle act is not a muniment of title which establishes ownership, but is merely intended to protect the public against theft and to facilitate recovery of stolen automobiles and otherwise aid the state in enforcement of its regulation of motor vehicles.") (citations omitted).
 
 
 11
 Under Oklahoma law, "[a] 'sale' consists in the passing of [legal] title from the seller to the buyer for a price (Section 2-401)." 12A Okla.Stat. § 2-106. Section 2-401 provides that "[u]nless otherwise explicitly agreed [legal] title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods ... even though a document of title is to be delivered at a different time or place...." Id. § 2-401(2); see also Semke v. Security State Bank, 603 P.2d 1112, 1115 (Okla.1979) ("[legal] title to the automobile passed to the buyer ... at the time and place at which the seller ... completed his physical delivery of the automobile to [the buyer]").[4] When Farris took possession of the vehicle is unclear from the record.[5] Therefore, we cannot conclude that Stark "obviously" sold the Blazer prior to April 11, 1988. Thus, it was not plain error for the district court to uphold Stark's conviction, notwithstanding the terms of the plea agreement. Accordingly, we affirm his conviction.[6]
 
 II. The Sentence Enhancement
 
 12
 The district court held that the Government waived its enhancement claim by failing to object to the PSR. Normally, failure to object to a PSR precludes review other than for plain error. See United States v. Saucedo, 950 F.2d 1508, 1511 (10th Cir.1991). This general rule against review may apply even where virtually the same issue was raised at an earlier point in the proceedings. See id. at 1510.[7] Thus, standing alone, the fact that the Government here provided notice prior to trial that it intended to raise the issue of enhancement might not serve to overcome its later failure to object.
 
 
 13
 However, in this case the Government not only provided notice prior to trial that it intended to seek the section 3147 enhancement, it also requested the enhancement immediately prior to the imposition of sentence. III R. at 227. Further, after the court imposed sentence for the underlying offense, the government inquired: "Your Honor, the Court sentenced [the Defendant] under the original offense only. Does the Court not intend to sentence him under 18 U.S.C. 3147? ... The Government submits that the Court should, in addition, sentence him consecutively" under section 3147. Id. at 228-29. Thus, the Government gave the court ample opportunity to address the enhancement and therefore cannot be deemed to have waived its enhancement claim. See Saucedo, 950 F.2d at 1511 (general waiver rule is premised upon the principle that " '[n]ormally, failure to alert the trial court to an error precludes review of that same issue by this court' ") (quoting United States v. Frederick, 897 F.2d 490, 494 (10th Cir.), cert. denied, 111 S.Ct. 171 (1990)). Accordingly, we reverse the district court's holding that the Government waived its enhancement claim.
 
 
 14
 Because it is not clear from the record whether the district court made findings as to when Stark committed the instant offense and whether such offense was committed while Stark was on release status, we must reverse the sentence and remand for further sentencing proceedings. If the court finds that the offense was committed while Stark was on release status, it would be mandatory to increase his offense level by three points. 18 U.S.C. § 3147; U.S.S.G. § 2J1.7.
 
 
 15
 At the same time, however, we note that the district court erred by adopting the legal conclusion of paragraph 26 of the PSR, thereby increasing Stark's criminal history score by two points pursuant to U.S.S.G. § 4A1.1(d). Appellant App. at 24, p 26. Section 4A1.1(d) requires the court to "[a]dd 2 points [to the criminal history computation] if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The PSR recommended this enhancement because it concluded that Stark was on bond for his prior conviction of April 11, 1988 at the time of his offense. Appellant App. at 24, p 26. However, section 4A1.1(d), by its terms, applies only to crimes committed while under sentence--not while under release status. Section 2J1.7 deals with release status. Because Stark was not sentenced on his first conviction until June 22, 1988, which was subsequent to the latest date on which his offense conduct was alleged to have occurred,[8] section 4A1.1(d) could not have applied. Because the two points erroneously added to Stark's criminal history placed him in Category III instead of Category II, raising his potential sentence, this error is substantial and therefore constitutes plain error.[9]
 
 
 16
 Accordingly, we AFFIRM Stark's conviction but REVERSE his sentence and REMAND for resentencing consistent with this Order and Judgment.
 
 
 
 *
 The Honorable Aldon J. Anderson, Senior District Judge of the United States District Court for the District of Utah, sitting by designation
 
 
 **
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 According to Western District of Oklahoma Rule 41(C), a plea agreement will not be enforced unless the court has approved it. The parties at bar never reduced their agreement to writing. Hence, that agreement does not appear to have been approved by the court and may be unenforceable under Rule 41(C). However, the Government acknowledges both the existence and the content of the agreement alleged by Stark. Since the Government does not question the enforceability of the agreement under Rule 41(C), we will not address that issue
 
 
 [2]
 Stark did mention the plea agreement during his final statement prior to the imposition of sentence. R. III at 226-27. However, the plea agreement in this case could serve only as a defense to conviction. It is not a defense for purposes of sentencing. Accordingly, even were we to consider the defense raised at the sentencing hearing, it would be untimely. See Fed.R.Crim.P. 29(c), 33 & 34 (motions for acquittal, new trial, or arrest of judgment must ordinarily be made within seven days of verdict or discharge of jury). Further, Stark's reference to the plea agreement at sentencing does not appear to take the form of a motion for acquittal, new trial, or arrest of judgment
 
 
 [3]
 Actually, the title history of the vehicle shows that Farris took title on April 14, 1987. However, Farris apparently became nervous when he found out that Stark was under investigation and attempted to sell the car back to Stark or nullify the purported sale of April 14, 1987. On November 25, 1987, Farris appears to have had a change of heart and signed an affidavit certifying that the "sale" back to Stark had fallen through and the certificate of title was properly in Farris' name. R. I, Doc. 33, Ex. C
 
 
 [4]
 Thus, the Government's argument that the sale occurred when the buyer paid Stark for the Blazer, on June 14, 1988, is flawed unless the vehicle was delivered at the same time. See Reid v. Tinker Auto Sales, Inc., 786 P.2d 714, 715 (Okla.Ct.App.1990) (sale of automobile complete when buyer takes possession of car and certificate of title notwithstanding agreement to pay purchase price at later date)
 
 
 [5]
 The November 25, 1987 affidavit signed by Farris states that "the vehicle was returned" to Farris during November of 1987. R. I, Doc. 33, Ex. C. However, given the nature of the paper transaction between Stark and Farris, in which the certificate of title to the Blazer was shuttled back and forth with no evidence as to whether the vehicle followed, and the other vague and potentially inconsistent testimony in the record, we are unwilling to treat this affidavit, written in order to obtain a certificate of title, as dispositive proof of the date on which Farris took possession, even in the absence of directly conflicting evidence
 
 
 [6]
 The Government argues that the jury's verdict under the indictment, which alleged that the offense conduct occurred "[o]n or about the 14th day of June, 1988," constitutes a finding as to the date of the defense conduct. In light of our holding, we do not decide whether the date in the indictment constitutes a fact found by the jury. However, we note that the date specified in the indictment places Stark in a difficult position in attempting to raise his plea agreement defense on appeal. If Stark did not challenge the date in the indictment, it could be argued that he has accepted it. If he did challenge the date and if the date were material to the conviction because of the plea agreement, then the jury's guilty verdict would constitute a finding as to the date of the offense conduct that would be reviewable only for clear error
 
 
 [7]
 In Saucedo, the defendant initially pled guilty. At a sentencing hearing he objected to the PSR and filed an alternative motion to withdraw his plea. The objections to the PSR "included the errors assigned in [his] appeal." Id. n. 1. The defendant eventually renewed his guilty plea. At his second sentencing hearing, he failed to object to the PSR which, although revised, appears to have contained the same alleged errors as the original PSR. Despite the fact that the defendant had at one time objected to those alleged errors, we held that his later failure to object was binding. Id. at 1511
 
 
 [8]
 The latest date asserted by the Government for when the instant offense occurred was June 14, 1988
 
 
 [9]
 Because this error is plain, we raise it despite Stark's failure to do so. See United States v. Voss, 956 F.2d 1007, at 1009 at (10th Cir.1992) (failure to raise applicability of guideline "does not license us to disregard the lower court's plain legal error")