OSCN Found Document:H2K TECHNOLOGIES v. WSP USA

 

 
 

 
 H2K TECHNOLOGIES v. WSP USA
2021 OK 59
Case Number: 119422
Decided: 11/16/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 59, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

H2K TECHNOLOGIES, INC., Plaintiff/Appellant,
v.
WSP USA, INC. and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF GARVIN COUNTY
HONORABLE LEAH EDWARDS, TRIAL JUDGE

Â¶0 This is an action by a materialman to foreclose a materialmen's lien. The lien was discharged and the original contractor and its surety were substituted as defendants. The trial court granted summary judgment in favor of the defendants holding that because the subcontractor had waived its right to file a lien the materialman had no right to file a lien. We reverse and remand for further proceedings.

APPEAL PREVIOUSLY RETAINED;
TRIAL COURT REVERSED AND REMANDED FOR FURTHER
PROCEEDINGS

Brett Agee, Garvin Agee Carlton, P.C., Pauls Valley OK, for plaintiff/appellant

John T. Richer, D. Kenyon Williams, and Christopher J. Gnaedig, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for defendants/appellees

COMBS, J.: 

Â¶1 This cause concerns an action to foreclose a materialman's lien filed on property located in Garvin County, Oklahoma. Wynnewood Refining Co., LLC (Wynnewood or owner) is the owner of an oil refinery located in Garvin County, Oklahoma (Property). On or about March 2, 2004, the owner, what is now Wynnewood, entered into an Environmental Services Agreement with the original contractor, what is now WSP USA, Inc. (WSP or original contractor), to provide labor and materials to improve the Property.[1] Thereafter, on or about August 28, 2018, WSP entered into a subcontract with Techsas, Inc., (Techsas or subcontractor) to provide labor and materials to improve the property (Techsas Contract). The Techsas Contract contained a waiver clause whereby Techsas waived all liens and claims, statutory or otherwise, resulting from the labor done and materials furnished on the project. The waiver clause also required Techsas to insert a similar waiver clause into any subcontracts it engages in. The parties agree that sometime in 2019, Techsas entered into a subcontract (H2K Contract) with the plaintiff/appellant, H2K Technologies, Inc., (H2K or materialman) to provide materials and labor to improve the property.

Â¶2 WSP received a total of three invoices from Techsas for the work it performed on the project and claims to have paid the first and second invoices on January 7, 2019 and February 11, 2019, respectively. Techsas filed for bankruptcy protection on February 13, 2019, two days after the second invoice was paid. Thereafter, H2K sent an invoice to Techsas dated February 14, 2019, in the amount of $116,280.00. In addition, H2K sent an invoice to WSP Environment & Energy (WSP E&E) on March 5, 2019, in the amount of $4,500.00.[2] Each invoice contained a provision for charging a monthly interest rate of 1.5% on past due invoices. When Techsas failed to pay H2K, the materialman served a preliminary lien notice on Wynnewood, Techsas and WSP which indicated the estimated price of the provided labor, services, equipment or materials was $120,780.00. On May 6, 2019, H2K filed a lien statement in the office of the Garvin County Clerk. The statement claims a lien in the amount of $120,780.00 plus interest after March 6, 2019, at a monthly rate of 1.5%, plus attorney fees and filing costs. On September 20, 2019, H2K filed its petition to foreclose the lien.

Â¶3 On January 3, 2020, the defendants, WSP, as principal, and Fidelity and Deposit Company of Maryland, as surety, submitted a bond in the amount of $150,975.00 to discharge the lien pursuant to 42 O.S. Supp. 2019, Â§ 147.1. WSP and Fidelity were substituted as defendants and H2K dismissed Wynnewood as a defendant in this action which resulted in an in rem action against the bond. After H2K objected to the bond amount, an additional $14,535.00 was placed into a trust account.

Â¶4 Both plaintiff and defendants filed competing motions for summary judgment. On February 26, 2021, the trial court ruled in favor of the defendants' motion and denied the plaintiff's motion. First, it ruled that although the Techsas Contract was governed by New York law, which prohibits waiver clauses, contract provisions that subject a construction contract to the laws of another state are against public policy in Oklahoma pursuant to 15 O.S. 2011, Â§ 821(B)(1). Next, the trial court ruled H2K is charged with constructive notice of the subcontract between Techsas and WSP and because Techsas had waived its rights to all liens and claims, H2K could not "obtain any greater rights" than the subcontractor Techsas. It held, H2K did not have a legal right to impress a lien on the Property and H2K's May 6, 2019 lien statement did not constitute a valid or proper lien. The trial court exonerated and discharged the bond and directed the surety to return all sums to WSP. The court also released the amounts held in the trust account to WSP. Enforcement of the order was stayed by the court for ten days.

Â¶5 H2K filed its petition in error on March 19, 2021. It asserted it had a valid lien for labor and materials and Techsas could not waive H2K's statutory right to a lien without H2K's knowledge and consent. H2K further asserted 15 O.S. 2011, Â§ 821(B)(1) provides it is against public policy of this state for a construction contract to have "[a] provision, covenant, clause or understanding in, collateral to or affecting a construction contract that disallows or alters the rights of any contractor or subcontractor to receive and enforce any and all rights under this act."[3] On March 22, 2021, this Court retained the matter on its own motion.

STANDARD OF REVIEW

Â¶6 Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e., whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Carmichael v. Beller, 1996 OK 48, Â¶2, 914 P.2d 1051, 1053. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is de novo. Id. 

ANALYSIS

Â¶7 The trial court held, as a matter of law, H2K had no right to file a lien. Therefore, the court determined the many objections to the alleged uncontroverted facts in the parties' motions for summary judgment were not material to the resolution of the issues presented.[4] H2K does not assert on appeal that the trial court erred in granting summary judgment because there were disputed genuine issues of material fact. However, because today we reverse the order granting summary judgment, we remand the matter to the trial court wherein the parties will have an opportunity to conduct discovery and pursue a trial if necessary. We retained this appeal to only decide the limited issues of law presented, i.e., 1) what effect, if any, does a waiver of lien clause in a subcontractor's contract with the original contractor have upon a materialman who was not a party to that contract; and 2) do the provisions of 15 O.S. 2011, Â§ 821(B)(2) prohibit such clauses from being placed in a construction contract.

1. The waiver of lien clause in the subcontractor's contract with the original contractor does not automatically flow down to the materialman, thereby waiving such materialman's statutory entitlement to file a mechanics' and materialmen's lien.

Â¶8 Section 143 of title 42 of the Oklahoma Statutes governs liens filed by a subcontractor as well as liens filed by those employed as an artisan or day laborer by a subcontractor and those who furnish material or equipment to such subcontractor.[5] The purpose of the lien statute is to protect subcontractors who provide labor and services, secure payment of claims, and give notice to owners of the intent to file a lien in a definite amount. Biantrav Contractor, LLC, v. Condren, 2020 OK 73, Â¶4, 489 P.3d 522, 523. Liens for material and labor are entirely of statutory creation. Holloman v. Britton, 1959 OK 187, Â¶11, 346 P.2d 941, 944. Statutory liens, such as mechanics' and materialmen's liens, stand in derogation of the common law and therefore must be strictly confined to the ambit of the enactment giving it birth. Riffe Petroleum Co. v. Great Nat. Corp., Inc., 1980 OK 112, Â¶5, 614 P.2d 576, 579. The terms prescribed by statute cannot be ignored; they are the measure of the right and of the remedy. Id. 

Â¶9 Section 143 provides both the entitlement to file a lien as well as limitations on that entitlement. It provides in pertinent part (emphasis added):

Any person who shall furnish any such material or lease or rent equipment used on said land or perform such labor as a subcontractor, or as an artisan or day laborer in the employ of the contractor, may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due for such material, equipment and labor, as well as any applicable profit and overhead costs due to the person; and any artisan or day laborer in the employ of, and any person furnishing material or equipment used on said land to, such subcontractor may obtain a lien upon such land, or improvements, or both, for the same time, in the same manner, and to the same extent as the subcontractor, for the amount due for such material, equipment used on said land and labor, as well as any applicable profit and overhead costs due to the person . . . . Provided further, that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor.

In the present case, Techsas, a subcontractor of the original contractor, WSP, subcontracted with H2K to provide materials and labor to be used on the land of the owner, Wynnewood. Thereafter, H2K filed a lien pursuant to Â§ 143 when Techsas failed to pay. The defendants assert H2K cannot file a lien. Its argument appears to be as follows: 1) pursuant to Â§ 143, H2K can only have a lien to the "same extent" as Techsas and Techsas waived its lien in its subcontract with WSP, therefore, H2K cannot have any greater right to file a lien than Techsas; 2) it has long been established in Oklahoma that a subcontractor is charged with notice of the "original contract" and therefore, H2K had constructive notice of the lien waiver clause in the Techsas Contract (a subcontract); and 3) the lien waiver provision flows down to H2K and it is bound by it.

Â¶10 In support of their argument, the defendants cite Treece v. Carpenter, 1923 OK 569, Â¶7, 222 P. 230, and assert that a subcontractor only has a lien "in the same manner, and to the same extent as the original contractor." The cited paragraph, however, provides:

[M]aterialmen and subcontractors shall have a lien, to the same extent as the original contractor, for the amount due him for such material and labor furnished. The contractor has a lien to the extent of the contract price, and therefore, under this statute, all of the persons, together, furnishing labor and material, would have a lien to the extent of the contract price. (emphasis added).[6]

First, the defendants misconstrue the term "extent" in Â§ 143. They interpret "extent" to mean the right or ability to file a lien. However, we have long defined "extent" to mean the obligation of the owner to pay the original contractor under the original contract. This interpretation is consistent with the limitations placed on a lien in Â§ 143, i.e., "the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor." In Consolidated Cut Stone Co. v. Seidenbach, 1937 OK 701, 75 P.2d 442, we examined the "extent" language in a previous version of Â§ 143. We held that a "lien is granted the subcontractor 'to the same extent' it is granted the contractor. The proviso limiting the liability of the owner to subcontractors to the amount he contracted to pay the contractor is but another way of saying that the liens of the subcontractor and the contractor are 'to the same extent' and subject to the same limitations." Id. Â¶24, 75 P.2d at 449. The owner's obligation to pay under the original contract "is the primary and controlling question." Id. Â¶27, 75 P.2d at 449. We determined "[i]n every case there must be liability to the original contractor." Id. In some cases and based upon the terms of the original contract, we acknowledged an owner may be obligated to "no extent" upon a breach of the contract or failure to perform. Id. Section 143 also provides:

[A]ny artisan or day laborer in the employ of, and any person furnishing material or equipment used on said land to, such subcontractor may obtain a lien upon such land, or improvements, or both, for the same time, in the same manner, and to the same extent as the subcontractor, for the amount due for such material, equipment used on said land and labor, as well as any applicable profit and overhead costs due to the person . . . .

Likewise, such materialman would have a lien to the same extent as the subcontractor, which, as discussed above, is to the same extent as the original contractor, and is limited by the amounts due him or her under Â§ 143 and shall not exceed the owner's obligation to the original contractor under the original contract.

Â¶11 Without any evidence that H2K actually agreed to limit its entitlement to file a lien, the "extent" of its lien is limited by Â§ 143 and cannot exceed Wynnewood's obligation under the original contract, i.e., no "greater amount than [Wynnewood] contracted to pay the original contractor [WSP]." The extent of that obligation is pursuant to the original contract. The cases cited by the defendants only serve to reiterate this point and provide no support for the argument that a subcontract, rather than the original contract, controls the extent of the owner's obligation.

Â¶12 Next, the defendants assert "Oklahoma's courts have long held the rights of a subcontractor are controlled by the original contract and that the subcontractor is charged with notice of the terms of said contract." In support of this argument, they cite Hudson Huston Lumber Co., v. Parks, 1923 OK 313, Â¶26, 215 P. 1072, 1075, wherein we quoted the following from William Mack, LL.D., Vol. 27 Cyclopedia of Law and Practice 93 (1907):

As a general rule the right of subcontractors, materialmen, and workmen to a lien is controlled by the terms of the original contract. They are chargeable with notice of the terms of such contract.[7]

The defendants rely on this quote to establish H2K had constructive notice of the Techsas Contract and therefore it was bound by it. However, the "chargeable with notice" language relates to the original contract. Again, this is because the original contract is what controls the obligation of the owner. The Techsas Contract is a subcontract between the original contractor and the subcontractor; it is not the original contract, nor does it appear that H2K was a party to its formation or execution. In addition, even if H2K's knowledge of the waiver of lien clause was relevant to the disposition of this matter, the clause required Techsas to place a similar lien waiver in any subcontracts it might make. Neither party claims the H2K Contract had such a provision. We do not find that under the authority presented H2K, as a matter of law, was charged with notice of the Techsas Contract and bound by its waiver of lien clause.

Â¶13 Lastly, the defendants assert the waiver of lien clause flows down from the Techsas Contract and is binding upon H2K. This argument is based upon two federal district court opinions that are neither precedential nor persuasive. In United Tunneling Enterprises, Inc., v. Havens Const. Co., 35 F. SupP.2d 789, 792 (D. Kan. 1998), a prime contract provided for liquidated damages to be paid upon a delay in the contractor's performance. The contractor entered into a subcontract. This subcontract contained a "pass through, flow-down or conduit provision" which provided the subcontractor agreed to be bound by the terms of the prime contract to the extent those terms applied to the work of the subcontractor. Id. at 794. The court determined such flow down provisions mean "'the same rights and duties should flow equally from the owner down through the general contractor to the subcontractor, as well as flowing from the subcontractor up through the general contractor to the owner.'" Id. at 795 (quoting Industrial Indemnity Co., v. Wick Construction Co., 680 P.3d 1100, 1103 (Alaska 1984)). The other case relied upon is Plum Creek Wastewater Auth. v. Aqua-Aerobic Systems, Inc., 597 F. SupP.2d 1228 (D. Colo. 2009). Therein, the court upheld the flow down provisions in the prime contract as well as in the purchase order which was agreed to by the supplier. The purchase order stated the "[s]upplier agrees to abide by all applicable terms and conditions of the General Contract between the Owner and the Prime Contractor, and warrants that the material covered by this agreement conforms to the requirements thereof." Id. at 1231-32. These cases are distinguishable from the present matter. In both cases the affected subcontractor or supplier agreed to be bound by the terms of the prime contract through a flow down provision. Here, there is no evidence that H2K ever agreed to a flow down provision that would bind it to the terms of the Techsas Contract.

Â¶14 The defendants have failed to provide any authority supporting its argument that H2K is bound by the terms of a subcontract to which it was not a party. In determining any limitation on a mechanics' and materialmen's lien, the primary and controlling document is the original contract and no authority has been presented to support that a subcontract is given the same status. Further, this Court has been opposed to the idea that parties to a contract could waive the statutory rights of third persons who were not parties to such contract. See Thacher v. Int'l Supply Co., 1936 OK 136, Â¶ 7, 54 P.2d 376, 378-79 (in discussing a "non-lien" provision in a contract between an owner and well drillers we determined, "we know of no rule of law permitting parties to so contract with each other as to do away with the statutory rights of third persons not parties to the contract."); Metro. Water Co. v. Hild, 1966 OK 96, 415 P.2d 970, 977 (Berry, J., specially concurring) ("The right to claim a lien is a privilege granted by statute and the party to whom such right is extended unquestionably may waive the privilege.").

Â¶15 The essence of the subcontractor mechanics' and materialmen's lien statute has changed little since its enactment.[8] The language that a subcontractor, etc., may obtain a lien "from the same time, in the same manner, and to the same extent as the original contractor" and the language limiting the liability of the owner have been in the statute since its inception. Although the statute has been interpreted to allow a subcontractor to file a lien against the owner's property even though the owner may have no knowledge of the subcontractor,[9] there is no indication it allows a party to waive the lien rights of third persons who are not a party to a contract that attempts to waive such rights. The statute allows a lien "for the amount due for such material, equipment used on said land and labor, as well as any applicable profit and overhead costs due to the person" but also provides the owner "shall not become liable to any claimant for any greater amount than he or she contracted to pay the original contractor." We hold, a party may waive their own statutory right to file a lien, otherwise, such right is limited by the provisions of Â§ 143. There being no evidence that H2K ever waived its right to file a lien, it therefore was not prohibited from filing its lien solely based upon the fact that Techsas had waived its right in its subcontract with the original contractor.

2. The provisions of 15 O.S. 2011, Â§ 821(B)(2) are not applicable to mechanics' and materialmen's liens and therefore do not make all lien waivers invalid as a matter of public policy in Oklahoma.

Â¶16 H2K asserted in its surreply that a lien waiver clause is invalid pursuant to 15 O.S. 2011, Â§ 821(B)(2). In its petition in error H2K states the trial court erred by ignoring 15 O.S. 2011, Â§ 821(B)(1), but quotes language from Â§ 821(B)(2). Section 821(B) provides:

B. The following are against this state's public policy and are void and unenforceable:

1. A provision, covenant, clause or understanding in, collateral to or affecting a construction contract that makes the contract subject to the laws of another state or that requires any litigation, arbitration or other dispute resolution proceeding arising from the contract to be conducted in another state; and

2. A provision, covenant, clause or understanding in, collateral to or affecting a construction contract that disallows or alters the rights of any contractor or subcontractor to receive and enforce any and all rights under this act.

The language in (B)(1) is applicable to H2K's earlier argument that the Techsas Contract, which was to be governed by New York law, would be against public policy. The trial court did not ignore H2K's arguments on that point and agreed that the governing law provision was void and against public policy and held this action would therefore be governed by Oklahoma law. However, the trial court did not overtly rule upon what affect, if any, subsection (B)(2) would have on the outcome of this case.

Â¶17 Subsection (B)(2) provides, it is against public policy for a provision in a construction contract to disallow or alter the rights of any contractor or subcontractor to receive and enforce any rights under this act. The act it is referring to is a two section act composed of sections 820 and 821 of title 15 of the Oklahoma Statutes.[10] Unlike the provisions of subsection (B)(1), subsection (B)(2) only relates to enforcing rights under this act. The purpose of the act is to provide deadlines on progress payments to contractors and subcontractors, to allow suspension of work upon non-payment, and to make provisions for resumption of work upon certain conditions being met.[11] Subsection (B)(2) would prohibit a contract from restricting enforcement of these provisions. We do not find that subsection (B)(2) is clearly meant to apply to mechanics' and materialmen's liens which are found in title 42 of the Oklahoma Statutes. The act covers a specific subject, and if the intent of the Legislature was to make it applicable to such liens it should be made manifest in language of plain and unambiguous meaning, not left to conjecture, or implication, especially in matters declaring a public policy. Therefore, we cannot agree with H2K's assertion that its provisions also apply to mechanics' and materialmen's liens which are not part of this act.

CONCLUSION

Â¶18 We hold that under the limited issues of law presented to this Court, H2K, without further evidence, was not bound by the waiver of lien clause in the Techsas Contract. We also hold that the provisions of 15 O.S. 2011, Â§ 821(B)(2) are not applicable to mechanics' and materialmen's liens. We reverse the trial court's order granting summary judgment and remand for further proceedings consistent with this opinion.

APPEAL PREVIOUSLY RETAINED;
TRIAL COURT REVERSED AND REMANDED FOR FURTHER 
PROCEEDINGS

Â¶19 Darby, C.J., Kane, V.C.J., Kauger, Winchester, Edmondson, Combs, Gurich, and Kuehn, JJ., concur.

Â¶20 Rowe, J., concurs in part, dissents in part.

FOOTNOTES

[1] The March 2, 2004 agreement is between Environmental Strategies Consulting, LLC., a Virginia limited liability company, and Coffeyville Resources Refining & Marketing, LLC., a Delaware limited liability company.

[2] According to the defendants' affidavit, WSP E&E was a Virginia limited liability company and has not existed since 2012. It was consolidated into WSP USA Corp., which is now known as WSP USA Buildings Inc. The contracts for the environmental group were assumed by WSP, as subsidiary of WSP USA Buildings Inc. H2K claimed that WSP E&E was a name WSP had used in the past and they did not file this invoice with Techsas because it had filed for bankruptcy. They further alleged that WSP's site manager knew they were completing the work and they believed WSP gave it the authority to finish the work.

[3] The plaintiff's quoted language is actually from 15 O.S. 2011, Â§ 821(B)(2) not (B)(1).

[4] The court held that "because the Court has determined that Plaintiff had no right to file its lien, Plaintiff's objections to Defendants' Undisputed Facts . . . are not material to resolution of the issues presented to the Court." Likewise, the court held "Defendants' objections to Plaintiff's Uncontroverted Facts . . . are not material to resolution of the issues presented to the Court." The Techsas Contract is material to deciding the dispositive legal issue concerning the waiver of lien clause. In its response to the defendants' motion for summary judgment, H2K does not dispute that a contract was entered into between WSP and Techsas; however, without conducting discovery, it was without knowledge of whether the contract was a correct copy of the Techsas Contract and therefore denied the defendants' asserted undisputed fact concerning the waiver of lien clause contained in the Techsas Contract. The record contains an executed copy of the Techsas Contract. When the moving party has made a prima facie showing that there is no genuine issue as to a material fact, the opposing party cannot defeat a motion for summary judgment by a bare contention that an issue of fact exists; the opposing party must show that evidence is available which would justify a trial of the issue. See Runyon v. Reid, 1973 OK 25, Â¶14, 510 P.2d 943, 946. H2K's bare contention that this copy of the Techsas Contract might not be a correct copy, without more, would not have been enough to defeat summary judgment for the defendants.

[5] Title 42 O.S. Supp. 2013, Â§ 143 provides:

Any person who shall furnish any such material or lease or rent equipment used on said land or perform such labor as a subcontractor, or as an artisan or day laborer in the employ of the contractor, may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due for such material, equipment and labor, as well as any applicable profit and overhead costs due to the person; and any artisan or day laborer in the employ of, and any person furnishing material or equipment used on said land to, such subcontractor may obtain a lien upon such land, or improvements, or both, for the same time, in the same manner, and to the same extent as the subcontractor, for the amount due for such material, equipment used on said land and labor, as well as any applicable profit and overhead costs due to the person, by filing with the county clerk of the county in which the land is situated, within ninety (90) days after the date upon which material or equipment used on said land was last furnished or labor last performed under such subcontract, a statement, verified by affidavit, setting forth the amount due from the contractor to the claimant, and the items thereof, as nearly as practicable, the name of the owner, the name of the contractor, the name of the claimant, and a legal description of the property upon which a lien is claimed. Immediately upon the filing of such statement the county clerk shall enter a record of the same against the tract index and in the journal provided for in the preceding section, and in the manner therein specified. Provided further, that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor. The risk of all payments made to the original contractor shall be upon such owner until the expiration of the ninety (90) days herein specified, and no owner shall be liable to an action by such contractor until the expiration of said ninety (90) days, and such owner may pay such subcontractor the amount due him from such contractor for such labor, equipment used on said land and material, and the amount so paid shall be held and deemed a payment of said amount to the original contractor.

[6] The defendants also quote from two opinions concerning different lien statutes that contain similar language as the current version of Â§ 143: Christy v. Union Oil & Gas Co., 1911 OK 83, Â¶0, 114 P. 740 ("A subcontractor on a leasehold for oil and gas purposes is entitled to a lien thereon under section 2, art. 5, c. 28, Sess. Laws 1905 (section 6171, Comp. Laws 1909), from the same time, in the same manner, and to the same extent as the original contractor, but is not entitled to a lien for any greater amount or to any greater extent; and, where there is no primary liability to the original contractor, there is not, under said act, any liability to the subcontractor."); Haggard v. Sunway Oil Co., 1936 OK 166, Â¶26, 54 P.2d 662, 665, quoting Brenner Oil Co. et al. v. Dickason-Goodman Lbr. Co., 1925 OK 340, 236 P. 44 ("By reason of sections 7464 and 7466, Comp. St. 1921, a lien is given in favor of a materialman, under a subcontractor, from the same time and in the same manner to the same extent, as if the materialman had furnished the material at the instance of the original contractor. But where there is no primary liability existing from the leaseholder to the original contractor, there, cannot, under said sections, be a lien in favor of a materialman under a subcontractor.").

[7] In Maddux v. Buchanan, 121 Va. 102, 109, 92 S.E. 830, 831-32 (1917), the Supreme Court of Appeals of Virginia cited to this provision of the Cyclopedia and held:

And while it would not be competent, under what we regard as the better though not the universal rule, for an owner to defeat the statutory rights of a subcontractor by a stipulation in the general contract against liens, or to assist the general contractor in placing a bona fide asset beyond the reach of his creditors by any subterfuge embodied in the terms of the general contract, the settled general rule is that a subcontractor is charged with notice and bound by the terms of the general contract, and that this rule applies especially to the mode and terms of payment agreed upon between the owner and the general contractor.

[8] See Christy v. Union Oil & Gas Co., 1911 OK 83, Â¶3, 114 P. 740, 740-41:

The same session of the Legislature passed an act, article 1 of chapter 28, Session Laws of Okla. 1905, which related to the general subject of mechanics' liens. Section 2 of that act (section 6153, Comp. Laws of Okla. 1909), in so far as the same is pertinent to this discussion, is as follows:

Any person who shall furnish any such material or perform such labor under a subcontract with the contractor, or as an artisan or day laborer in the employ of such contractor, may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material and labor * * * by filing with the clerk of the district court of the county in which the land is situated, within sixty days after the date upon which material was last furnished or labor last performed under such subcontract, a statement, verified by affidavit. * * * Immediately upon the filing of such statement the clerk of the district court shall enter a record of the same in the docket provided for in section 6152, and in the manner therein specified, that the owner of any land affected by such lien shall not thereby become liable to any claimant for any greater amount than he contracted to pay the original contractor.

[9] "'Where an action is brought . . . to enforce a materialman's lien for material furnished under a subcontract with the contractor, it is not necessary to allege or prove that the owner of the building' knew of such party furnishing lumber." Hudson Huston Lumber Co., v. Parks, 1923 OK 313, Â¶21, 215 P. 1072, 1074, quoting Ferguson v. Stephenson-Brown Lumber Co., 1904 OK 51, 77 P. 184.

[10] 2010 Okla.Sess.Laws ch. 208 (SB 1012).

[11] Most of the substantive provisions of the act can be found in 15 O.S. 2011, Â§ 820 which provides:

A. Bid Projects.

1. On all private construction projects in which a set of plans or specifications or both plans and specifications are issued for bid, the owner shall specify in writing the frequency and time period for payments to the prime contractor. The general specifications and the first page of all bid plans shall include the following, or substantially similar, language:

OWNER SHALL ISSUE PAYMENTS WITH A FREQUENCY OF __________.

OWNER SHALL ISSUE EACH PAYMENT TO THE PRIME CONTRACTOR WITHIN ________ DAYS AFTER RECEIPT OF CONTRACTOR'S BILLING.

Any resulting contract shall include the payment frequency and time period prescribed in the general specifications and bid plans. An architect, engineer, or other entity preparing the plans and specifications for the owner shall not be liable for the failure to include the payment terms on a set of plans or specifications used for bidding purposes.

2. If the owner fails to comply with the provisions of paragraph 1 of this subsection, the following shall be applicable:

a. the owner shall make monthly progress payments, and

b. payments shall be due within twenty-eight (28) calendar days after receipt of billing.

3. The owner may reduce the progress payment as provided for in the contract.

4. Subcontractors shall be paid by the prime contractor within ten (10) calendar days of payment from the owner, or as otherwise agreed to by the parties. Payment may be reduced as provided for in the subcontract.

B. Private Negotiated Projects.

1. The provisions of subsection A of this section shall not be applicable to private negotiated projects.

2. An owner may choose to negotiate a construction contract with a contractor, and may also choose to keep the payment terms of that contract private.

3. If a contractor invites a subcontractor to bid on any portion of a negotiated project, the contractor shall clearly define the contractor's payment term upon issuance of the invitation to bid. Such payment term shall be defined as to the frequency that payments shall be made, and a specific day of the month that the subcontractor shall expect to receive each payment.

4. Any subcontract negotiated pursuant to this subsection shall include the same payment terms as were represented by the prime contractor to the subcontractor prior to the acceptance of the bid of the subcontractor. Payment may be reduced as provided for in the subcontract.

C. Suspension of Work for Bid Projects and Private Negotiated Projects.

1. The prime contractor may suspend work:

a. when payment has not been received within ten (10) calendar days of the date payment should have been received,

b. if the prime contractor has complied with the contract, and

c. if the prime contractor has given the owner ten (10) calendar days written notice of work suspension delivered by certified mail or other verifiable service.

2. Subcontractors may suspend work:

a. when payment has not been received within ten (10) calendar days of the date payment should have been received,

b. if the subcontractor has complied with the subcontract, and

c. if the subcontractor has given the prime contractor ten (10) calendar days written notice of work suspension delivered by certified mail or other verifiable service.

D. Resumption of Work.

No prime contractor or subcontractor shall be required to resume work until:

1. Receipt of full payment of undisputed portions of outstanding billing;

2. The contracted work schedule is extended the number of days of delay; and

3. A change order is issued for the verifiable direct cost of suspension, delay and start-up.